UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JORMAN JOSE SILVA SANCHEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-02137-JRS-TAB |
| | ) | |
| RUSSELL HOTT, | ) | |
| KRISTI NOEM, | ) | |
| PAMELA BONDI, | ) | |
| EXECUTIVE OFFICE FOR | ) | |
| IMMIGRATION REVIEW, | ) | |
| KERRY FORESTAL, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER GRANTING PETITION FOR HABEAS CORPUS

Jorman Jose Silva Sanchez ("Petitioner") is a noncitizen who entered the United States through its territorial border in Texas in March of 2024 without inspection. Dkt. 1; dkt. 1-2. In mid-September of 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE") agents in Chicago, Illinois as part of a "targeted immigration enforcement operation." Dkt. 1, ¶ 15. Petitioner now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or a prompt bond hearing pursuant to 8 U.S.C. § 1226(a) as well as declaratory relief. *Id.* at 14. For the reasons explained below, the Court grants the petition to the extent that, within seven days of this Opinion, Respondents are ordered to either: (1) afford Petitioner an individualized bond hearing pursuant to §

1226(a) before an Immigration Judge ("IJ"); or (2) release him from custody, under the most recent conditions of supervision.

## I.    Background

Petitioner entered the United States without inspection on or about March 31, 2024, in Texas. Dkt. 1 ¶ 44.  Officials from the Department of Homeland Security ("DHS") apprehended Petitioner shortly after he arrived, but released him on his own recognizance pursuant to INA § 236 [8 U.S.C. § 1226] on or around April 1, 2024. *Id.*; dkt. 1-3 (Order of Release on Recognizance). That day, DHS issued Petitioner a Notice to Appear and placed him in removal proceedings under 8 U.S.C. § 1229(a). *Id.*; dkt. 1-2 (Notice to Appear). The Notice to Appear charges Petitioner with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") [8 U.S.C. § 1182(a)(6)(A)(i)] as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.* The "arriving alien" checkbox is unmarked. *Id.*

In September of 2025, Petitioner was living with his family in Chicago when ICE agents detained him during a "targeted immigration enforcement operation." Dkt. 1 ¶ 45. ICE issued Petitioner a Form I-830E and a Warrant for Arrest Form I-200, which commanded "any immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act" to arrest him. Dkt. 11-1 at 10–19. Petitioner was subsequently transferred to the Marion County Jail in Indianapolis, Indiana, where he remains in custody. At the

time of his arrest, Petitioner had a pending application for Asylum and Withholding of Removal. Dkt. 1 ¶ 48.

On October 17, 2025, Petitioner filed this writ of habeas corpus petition, arguing that Respondents are unlawfully detaining him under 8 U.S.C. § 1225(b)(2)(A). Dkt. 1. Petitioner argues that he is only properly detained under 8 U.S.C. § 1226(a), which entitles him to an individualized bond hearing. *Id.* On October 20, 2025, the IJ issued a ruling on the Petitioner's motion for a bond hearing. Dkt. 11-2 (Order of the Immigration Judge). The IJ denied the request for change in custody status, stating "this Court lacks jurisdiction over bond. See *Matter of Yajure Hurtado* 29 I&N Dec. 216 (BIA 2025), and *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025))." Dkt. 11-2 at 1.

## II.    Discussion

Petitioner claims that his current detention violates the INA (Count I) and the Due Process Clause of the Fifth Amendment (Count II). Dkt. 1 at 13–14. In opposition, Respondents make three arguments: (1) that this Court lacks jurisdiction over the petition; (2) that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2)(A); and (3) that, in the alternative, Petitioner is lawfully detained under 8 U.S.C. § 1226. Dkt. 11.

As discussed below, the Court finds that Petitioner's detention is governed by § 1226(a) and that the detention is unlawful because Petitioner has not been afforded a bond hearing. Because Petitioner is entitled to habeas corpus relief on these grounds, the Court does not address the constitutional arguments.

3

### A. Jurisdiction

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner argues that this Court has jurisdiction over his petition because he challenges his detention without a bond hearing in violation of the INA. Dkt. 15 at 11. Respondents, however, point to three provisions that curtail a district court's jurisdiction over habeas petitions filed by noncitizen detainees: 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(5). In certain immigration matters, the INA does limit the district courts' jurisdiction. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018). None apply here.

### i. Section 1252(g)

Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Following the Supreme Court, the Seventh Circuit determined that § 1252(g) only bars a district court's judicial review of "the three listed decisions or actions." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021) ("[sec 1252(g)] does not sweep broadly; only challenges to the three listed decisions or actions—to commence proceedings, adjudicate cases, or execute removal orders—are insulated from judicial review.") (citing *Reno v. American-Arab Anti–Discrimination Comm. (AAADC)*, 525 U.S. 471, 482 (1999)). The instant petition does not fit into the enumerated decisions or actions. Petitioner does not challenge the "commencement"

of his removal proceedings because those proceedings commenced a year and a half ago when he was issued a Notice to Appear. He does not challenge the "adjudication" of his case because he is not challenging anything related to the removal proceedings themselves. Last, he does not challenge the execution of his removal order—in fact, there is no removal order. *See* dkt. 15 at 5.

Respondents argue that § 1252(g) is more expansive because it "also bars district courts from hearing challenges to the *method* by which the Secretary of Homeland Security chooses to commence removal proceedings, including the decision to detain an alien pending removal." Dkt. 11 at 4 (emphasis added). Respondents, however, ignore Supreme Court and Seventh Circuit precedent rejecting attempts to expand § 1252(g) beyond the three enumerated decisions or activities.[1] In *Department of Homeland Security v. Regents of the University of California*, the Supreme Court rejected the government's argument that § 1252(g) barred their review of an APA claim involving the recission of DACA because the Court had already "rejected as 'implausible'" any claim that § 1252(g) covers "all claims arising from deportation

---

[1] In support, Respondents cite to *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016), which concluded that § 1252(g) barred a district court from hearing some parts of a *Bivens* claim challenging ICE's methods of commencing removal proceedings once the plaintiff's criminal sentence ended. As Petitioner points out, the *Alvarez* plaintiff was making a *Bivens* claim challenging the way that the government commenced removal proceedings—whether he entered into a stipulated removal order or had to attend removal proceedings. The *Alvarez* court reasoned that the plaintiff "essentially asked the court to find that the agency should have chosen a different method of commencing proceedings." *Id.* Even still, *Alvarez* reversed the district court's determination that 1252(g) stripped its jurisdiction over the plaintiff's claim that his detention violated the Fifth Amendment because his removal was not reasonably foreseeable. *Id.* at 1205. Heeding Supreme Court guidance to read § 1252(g) as a "narrow provision," *Alvarez* determined the district court had jurisdiction over the plaintiff's claim that ICE had no statutory grounds to detain him. *Id.* (citing *AAADC*, 525 U.S. at 482).

proceedings." 591 U.S. 1, 19 (2020) (quoting *AAADC*, 525 U.S. at 482). More specifically, confronted with a habeas petition challenging the petitioner's confinement until his deportation, the Seventh Circuit held that "nothing in § 1252(g) precludes review of the decision to confine." *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000). Indeed, courts have consistently found that § 1252(g) does not bar a district court's jurisdiction over challenges to the legality of noncitizen's detention. *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025) ("Section 1252(g) 'does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention.'") (quoting *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023)); *Guerrero Orellana v. Moniz*, 2025 WL 2809996 (D. Mass. Oct. 3, 2025) (concluding that § 1252(g) did not apply to habeas challenge of ongoing detention without a bond hearing); *Alejandro v. Olson*, 2025 WL 2896348, at *3 (S.D. Ind. Oct. 11, 2025) (same); *Campos Leon v. Forestal*, 2025 WL 2694763, at *2 (S.D. Ind. Sept. 22, 2025) (same). Considering this precedent, the Court cannot adopt Respondents' expanded interpretation of § 1252(g).

### ii. Section 1252(b)(9)

Section 1252(b)(9) states, "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other

habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact."

In *Regents of the University of California*, the Supreme Court reiterated that the "arising from" language in § 1252(b)(9) "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" 591 U.S. 1, 19 (2020) (quoting *Jennings*, 583 U.S. at 292–93). Here, Petitioner is not seeking review of an order of removal. As seen above, the government has not issued a final order of removal. He is also not seeking review of the process for determining his removability. Petitioner instead challenges his detention without a bond hearing, which is an issue that can be heard without affecting Petitioner's ongoing removal proceedings.

Respondents attempt to avoid this interpretation of § 1252(b)(9) by citing to Justice Thomas's concurrence in *Jennings* that "detention is an 'action taken ... to remove' an alien. And even the narrowest reading of 'arising from' must cover claims that directly challenge such actions." *Id.* at 318. As the Second Circuit recently explained in *Ozturk v. Hyde*, however, the plurality in *Jennings* explicitly rejected Justice Thomas's interpretation because "the mere fact that a noncitizen is detained does not deprive courts of jurisdiction under § 1252(b)(9)." 136 F.4th 382, 399 (2d Cir. 2025). Instead, "'[t]he question is not whether *detention* is an action taken to remove an alien but whether the legal questions in this case arise from such an action.'" *Id.*

(quoting *Jennings*, 583 U.S. at 295 n.3) (emphasis in original). Furthermore, *Regents of the University of California*, which was decided two years after *Jennings*, explained that the "arising from" language does not bar district courts from reviewing cases where the parties are not challenging removal proceedings.

Following the Supreme Court's guidance, district courts around the country have determined that § 1252(b)(9) does not strip them of jurisdiction over habeas challenges to ongoing detention without a bond hearing. *See, e.g., Ochoa Ochoa v. Noem et al.*, 2025 WL 2938779, at *4 (N.D. Ill. Oct. 16, 2025) (finding that § 1252(b)(9) did not preclude jurisdiction over petitioner's challenge to his mandatory detention without a bond hearing under § 1225 because it does not bar "claims challenging the conditions or scope of detention of aliens in removal proceedings") (internal quotations omitted); *Giron Reyes v. Lyons*, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025) (holding that § 1252(b)(9) did not apply to habeas challenge of ongoing detention without a bond hearing); *Leal-Hernandez v. Noem*, No. 1:25-CV-02428-JRR, 2025 WL 2430025, at *6 (D. Md. Aug. 24, 2025) (rejecting government's jurisdictional arguments in habeas challenging whether Petitioner was properly subject to mandatory detention under 8 U.S.C. § 1225(b)(2)).*Guerrero Orellana*, 2025 WL 2809996 (same).

### iii.  Section 1252(a)(5)

Respondents also invoke § 1252(a)(5), which reserves for the courts of appeals "judicial review of an order of removal." At the outset, this provision is not applicable because Petitioner does not challenge an order of removal. Nevertheless, Respondents

argue that, when read alongside § 1252(b)(9), § 1252(a)(5) bars judicial review of any issue arising from removal-related activity. Dkt. 11 at 6. Respondents cite the *Jennings* concurrence as well as earlier courts of appeals' decisions to expand these sections to cover any action where a petitioner is in removal proceedings. As stated above, however, the *Jennings* plurality rejected this interpretation of the statute's "arising from" language. Moreover, Respondents' cases explain that § 1252(a)(5) and § 1252(b)(9) do not apply to habeas challenges to unlawful detention not involving a final order of removal. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (explaining that § 1252(b)(9) does not apply to federal habeas corpus provisions that do not involve final orders of removal, but finding that, "[i]n light of §§ 1252(b)(9) and 1252(a)(5) and our precedent, the [plaintiffs'] right-to-counsel claims must be raised through the PFR process because they 'arise from' removal proceedings"); *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (quoting *Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006) for the proposition that "district court, not court of appeals, had jurisdiction where plaintiffs' habeas petitions challenged only the constitutionality of the arrest and detention, not the underlying administrative order of removal'"). Respondents' cases also involve petitioners and plaintiffs who ask district courts to review denials of applications to halt removals. *See Rosario v. Holder*, 627 F.3d 58 (2d Cir. 2010) (finding that district court did not have jurisdiction over petition to review the BIA's cancellation of petitioners' application to cancel removal); *Delgado*, 643 F.3d at 55 52 (finding that the district court did not have jurisdiction to compel the USCIS to consider petitioner's I-212 application). In sum, none of these cases

demonstrate that § 1252(a)(5), when read together with § 1252(b)(9), preclude district courts from exercising jurisdiction over habeas petitions challenging unlawful detention.

As a whole, Respondents' jurisdictional arguments fail. This Court has jurisdiction over Petitioner's challenge to his unlawful detention.

### B. Legality of Detention

The merits of the petition revolve around Respondents' statutory authority to detain Petitioner while his removal proceedings remain pending. Petitioner argues that the statutory text and context make it so that Respondents can only lawfully detain him pursuant to 8 U.S.C. § 1226(a). Respondents argue that Petitioner is subject to the broader "catchall provision" in § 1225(b)(2) because he is an "applicant for admission." Dkt. 11 at 8.

### i. Overview of §§ 1225 and 1226

8 U.S.C. § 1226 and § 1225 govern the detention and removal of noncitizens. In general, § 1226 applies to aliens already present in the United States, while § 1225 applies to "certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond . . . ; or
> (B) conditional parole . . ..

8 U.S.C. § 1226(a). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under § 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, it provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who

11

has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending.

### ii. Analysis

In this case, the Respondents' actions and their representations to Petitioner demonstrate that his re-detention in September of 2025 is governed by § 1226. As seen above, Petitioner was initially detained in 2024. If Petitioner was an "alien arriving in the United States," the government was obligated by statute to immediately order Petitioner removed from the United States or refer him to an asylum officer, at which point he would have been subject to either removal or mandatory detention pending review of his claim. 8 U.S.C. § 1225(b)(1). Alternatively, if Petitioner was "an applicant for admission" to the United States, the government was obligated to detain him pending resolution of removal proceedings. 8 U.S.C. § 1225(b)(2).

The government did not exercise either authority. Instead, DHS issued a Notice to Appear commencing removal proceedings and released Petitioner on his own recognizance pursuant to § 1226. Dkt. 1-3. Section 1226—not § 1225—explicitly authorizes release. More than a year later, once the Petitioner was living in Chicago, DHS issued an arrest warrant that explicitly invokes § 1226. Dkt. 11-2 at 18. Indeed, the text of § 1226 authorizes the arrest and detention of aliens with a warrant. Section 1225 does not contain any language about warrants since detention is mandatory.

*See Campos Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) ("It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions."). In sum, DHS's documents make it clear that Petitioner's current detention is only authorized under § 1226(a). "[T]he Government has affirmatively decided to treat" Petitioner "as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that he is detained under Section 1225(b)." *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025) (citing *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)).

The few district court opinions that have found that noncitizens arrested in the interior were properly detained pursuant to § 1225 emphasize that in those instances, DHS did not issue a warrant for the alien's arrest and detention. *See, e.g., Sandoval v. Acuna*, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025) ("Petitioner does not allege that the Attorney General issued a warrant for her arrest and detention, further indicating that Petitioner is properly detained under § 1225(b) as an 'applicant for admission,' not § 1226(a)"); *Vargas Lopez v. Trump*, 2025 WL 2780351, at *7 (D. Neb. Sept. 30, 2025) ("This failure of proof of a warrant for Vargas Lopez's arrest is fatal to the Second Cause of action. Vargas Lopez has not provided this Court with the documents necessary for Vargas Lopez to be eligible for release on bond under § 1226."). In contrast, *Cirrus Rojas v. Olson, et al.*, No. 25-cv-1437-bhl, dkt. 20, (E.D. Wis. Oct. 31, 2025) found that a petitioner's detention fell under § 1225 despite having

been issued a warrant citing § 1226 and granted bond in a previous hearing. *See also Mejia Olalde v. Noem*, 2025 WL 3131942, at *2 (E.D. Mo. Nov. 10, 2025) (finding that the plain language of § 1225(b)(2) supports the conclusion that Petitioner, who had been living in the United States for 40 years, was subject to mandatory detention as an "applicant for admission."). Neither *Cirrus Rojas* nor *Mejia Olalde* compel the Court to conclude that § 1225 applies here. The cases are not identical factually and, as explained below, the Court finds here that the nature and circumstances of Petitioner's arrest and proceedings support application of § 1226 rather than § 1225.

### a. Plain meaning

Aside from the record evidence, the plain meaning of the statute supports Petitioner's position that ICE's authority to detain him derives from § 1226(a) and not from § 1225(b)(2)(A). *See Cazarez-Gonzales v. Olson*, No. 2:25-CV-590 (S.D. Ind. Dec. 5 2025) (collecting cases); *see also Castañon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *8-*10 (7th Cir. Dec. 11, 2025) (stating that "Plaintiffs have the better argument on the current record" referring to argument that "ICE's authority to detain a noncitizen discovered within the country derives from § 1226(a) and not from § 1225(b)."). Respondents argue that § 1225(b)(2) pertains to Petitioner because he is an "applicant for admission" and "not clearly and beyond a doubt entitled to be admitted." Dkt. 11 at 8–9. Respondents do not appear to argue that Petitioner meets the third criterion of "seeking admission." Instead, they claim that his pending asylum application qualifies him as an "applicant for admission." Dkt. 11 at 11.

Respondents' attempt to elide "seeking admission" as a criterion for § 1252(b)(2) is unconvincing. *See Castañon-Nava*, 2025 WL 3552514, at *9 ("And while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A)."). As the Seventh Circuit recently explained regarding the same argument, "it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.'" *Castañon-Nava*, 2025 WL 3552514, at *9 (quoting 8 U.S.C. § 1225(a)(1)). "[Congress] could easily have included noncitizens who are 'seeking admission' within the definition [of applicant for admission] but elected not to do so." *Id.* As such, Respondents' implicit construction of "seeking admission" in § 1225(b)(2)(A) as merely repeating "applicant for admission" would render the phrase superfluous, "violating one of the cardinal rules of statutory construction." *Id.* (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)). "[A]s the Supreme Court reminds us, if an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Id.* (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)). Thus, the fact that Petitioner fits only two out of three criteria does not suffice to show that § 1225(b)(2) applies to Petitioner.

### b.  Statutory context

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted). Considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in § 1225(b)(2), reflecting that Congress envisions § 1225 to apply broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. As Respondents concede, Petitioner "is not 'arriving' in the United States." Dkt. 11 at 9.

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the "[a]pprehension and detention of aliens." The plain language

16

here suggests that § 1226—not § 1225—applies to Petitioner because he is an alien, who was "apprehended" and "detained" after a warrant was issued for his arrest. The fact that these two classes of noncitizens would be treated differently makes sense within broader immigration law. As the Seventh Circuit explained, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed, '[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.'" *Castañon-Nava*, 2025 WL 3552514, at *10 (quoting *Zadvydas*, 533 U.S. at 693); *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

### c. No statutory surplusage

Last, adopting Respondents' reading would render recent congressional enactments superfluous. Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls

within one of the new classes of non-bondable aliens established by the Laken Riley Act. This absurd result is one of the reasons why district courts have rejected Respondents' interpretation. *See, e.g.*, *Beltran Barrera*, 2025 WL 2690565, at *4 (noting that the Laken Riley Act makes respondents' interpretation of § 1225(b)(2) implausible because "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.") (quoting *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)); *Lopez-Campos*, 2025 WL 2496379 at *8 (explaining that if "Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework.").

Respondents do not address the Laken Riley Act nor do they demonstrate how their reading would not render § 1226(c) superfluous.

### d.  Prior usage and interpretation

Respondents' argument that only § 1225(b)(1)—and not the entirety of § 1225—applies to "arriving aliens" fails when considering the statute's prior usage and interpretation. For example, 8 C.F.R. § 235.3(c)(1) notes that "[e]xcept as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section [1229a] shall be detained in accordance with section [1225(b)]."

Furthermore, the government previously applied section 1226(a) to noncitizens, such as Petitioner, who entered the country without inspection. *See*

18

*Hurtado*, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."); *Martinez*, 2025 WL 2084238, at *6. While interpreting the meaning of a statute belongs to the "independent judgment" of the courts, "'the longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-86 (2024) (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)). The Court finds that the government's longstanding practice, under which § 1225(b)(2)(A) would not have applied to Petitioner's circumstances, is consistent with the text and statutory scheme. *See, e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *8 (reaching same conclusion); *Alejandro*, 2025 WL 2896348, at *8; (reaching same conclusion); *Campos Leon,* 2025 WL 2694763, at *4 (reaching same conclusion).

## C.    Legality of Detention under § 1226(a)

Respondents argue that even if Petitioner's detention is authorized under § 1226(a) instead of § 1225, it is lawful because Petitioner received a bond hearing before an IJ. Dkt. 11 at 11. Thus, § 1226(e) precludes the Court's jurisdiction over this matter because it bars noncitizens from "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Id.* (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). Petitioner replies that he is not challenging a denial of bond—he is challenging his detention without having received a bond *hearing*. Dkt. 15 at 11.

Respondents' argument fails. First, as Petitioner argues, it is inaccurate to characterize the IJ's decision that she lacked authority to provide Petitioner with a bond hearing as a "discretionary judgment" and/or a "decision . . . regarding the detention of any alien or the revocation or denial of bond or parole." § 1226(e). Petitioner filed a motion for a bond hearing, but it was denied on the papers based on lack of jurisdiction due to *Matter of Yajure Hurtado* and *Matter of Q. Li*. This implies that the IJ refrained from exercising discretion or making a decision about Petitioner's bond. Indeed, *Matter of Yajure Hurtado*—the basis for the IJ's decision— plainly states that IJs "lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." 29 I. & N. Dec. at 225. It comes to this conclusion because the BIA determined that § 1225(b)(2)(A)—not § 1226(a)—applied to the noncitizen appellant. *Id.* at 220 ("Under the plain reading of the INA, we affirm the Immigration Judge's determination that he did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings."). This implies that IJs following Matter of *Yajure Hurtado* cannot hold bond hearings for noncitizens such as Petitioner.

Furthermore, Respondent does not cite any binding precedent applying § 1226(e) to the rejection of a bond hearing as opposed to a denial of bond following a hearing. For example, Respondents' case *Demore v. Kim* held that § 1226(e) did *not* deprive courts of habeas jurisdiction over a challenge to detention under § 1226(c)

because the petitioner did not challenge a discretionary judgment or a decision, but the statutory framework permitting his detention without bail. 530 U.S. at 516–17. Respondents' other case, *Vidal-Martinez v. Prim*, 2020 WL 6441341, at *1 (N.D. Ill. Nov. 3, 2020), is similarly inapposite. In *Vidal-Martinez*, the petitioner had a bond hearing wherein the IJ "determined that *Vidal-Martinez* was a danger to the public and declined to grant bond." *Id.* She then held another hearing where she rejected the petitioner's argument that there were changed circumstances because he was unconscious in a stationary vehicle during one of his OWI arrests." *Id.* The court denied jurisdiction, citing § 1226(e), because "Vidal-Martinez does not challenge the process he received during the IJ's bond determination, but instead asks the Court to displace the IJ's determination and declare that he is eligible to be released on bond." *Id.* at *3. The *Vidal-Martinez* court, however, explicitly recognized that § 1226(e) does not prohibit habeas review or jurisdiction over a petitioner's constitutional challenge to mandatory detention. *Id.* (citing *Kim*, 538 U.S. at 517 and *Al-Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008)).

    In sum, the IJ's decision to refrain from exercising jurisdiction in no way constitutes a discretionary judgment and thus, § 1226(e) does not preclude jurisdiction. Furthermore, Respondents have not shown that Petitioner received a bond hearing wherein an IJ denied bond. This means that his detention pursuant to § 1226(a) is currently unlawful.

### III.    Scope of Relief

Petitioner requests immediate release from custody or, in the alternative, an individualized custody redetermination hearing. As Respondents concede, the latter is appropriate here because detention under § 1226(a) is discretionary and the due process violation arises from Petitioner's re-detention without a bond hearing.

### IV.    Conclusion

For the above reasons, Respondents' detention of Petitioner without an individualized bond hearing violates the "laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Thus, Petitioner's petition for writ of habeas corpus is **granted to the extent, that w**ithin **seven days of this order, Respondents must either**: (1) provide Petitioner with an individualized bond hearing pursuant to § 1226(a) before an IJ; or (2) release Petitioner from custody, under the most recent conditions of supervision. Respondents must document that they have provided Petitioner with a bond hearing or release and file notice with the Court within **four days** of either action. The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: __12/30/2025__

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Joshua G Herman
Law Office of Joshua G. Herman
jherman@joshhermanlaw.com

Anthony W. Overholt
Frost Brown Todd LLP
aoverholt@fbtlaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov